451 So.2d 165 (1984)
David FERGUSON
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, OFFICE OF MANAGEMENT AND FINANCE.
No. 83 CA 0751.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
*166 Raymond L. Simmons, Baton Rouge, for appellant.
Robert D. Hamlett, Staff Atty., Dept. of Health & Human Resources, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall, Director of the Dept. of State Civil Service.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
The primary issue in this Civil Service Commission appeal is whether or not the appointing authority has proven by a preponderance of the evidence charges sufficient to justify the disciplinary action taken against appellant.
Appellant, David Ferguson, is employed with permanent status as an Auditor IV by the Department of Health and Human Resources (DHHR). This employment requires him to work at various locations in the State for varying lengths of time. During October of 1981 he was assigned to a job site near Lafayette, but failed to report to work from October 20th until November 9th. On or about October 27, 1981, Ferguson, who resides in Baton *167 Rouge, telephoned a co-worker to report he was ill and did not know when he would be able to return. He indicated he was suffering from a reoccurrence of neck and back problems sustained in an automobile accident and requested this information be passed on to Mr. LeGrange, one of his Baton Rouge supervisors. During his absence from work, Ferguson took the State CPA examination on November 4th, 5th and 6th.
When Ferguson returned to work, he submitted a request for sick leave for the entire period of his absence. When the original medical certificate attached to his leave request was deemed insufficient because it made reference only to the date of October 27th, Ferguson obtained a second medical certificate covering the entire period of his absence.
Upon learning Ferguson had taken the CPA exam during his absence, the appointing authority contacted his physician to obtain further information. In a written response to a letter requesting authentication of the dates and signature on the medical certificate submitted by Ferguson, his physician indicated they were authentic. But he also wrote that Ferguson had said he would be fired unless he obtained a signed medical certificate covering the entire period of his absence. Ferguson denied making such a statement to his physician. Additionally, in reply to the specific question of whether or not Ferguson was incapable of performing his job duties on November 4th, 5th and 6th, i.e., the dates on which he took the CPA exam, his physician wrote "not known."
LeGrange held a meeting with Ferguson on December 11, 1981 to discuss questions which had arisen concerning the period of his absence. LeGrange questioned Ferguson as to why he had failed to comply with an order to report any absences directly to LeGrange. Ferguson denied any memory of such an order. However, the fact that Ferguson had sent a message to LeGrange through another employee that he was ill, is inconsistent with Ferguson's claim that he had not been ordered to report his absences to LeGrange and that such reporting was not normal procedure.
The propriety of Ferguson claiming sick leave rather than annual leave for time used to take the CPA exam was also discussed. Ferguson's position was that he could do as he liked with his sick leave. However, he claimed he was still ill when he took the exam. He was unreceptive to the suggestion of changing his request from sick to annual leave for the time spent taking this exam. The meeting culminated in LeGrange verbally suspending Ferguson, pending further investigation of the matter. Only then did Ferguson show any willingness to change his request from sick to annual leave. By this time Ferguson's manner toward LeGrange was overtly hostile.
Ferguson's indefinite verbal suspension, pending investigation, was confirmed by letter dated December 22, 1981. Following an investigation, Ferguson was informed by letter dated January 25, 1982 of his suspension without pay for 45 days. Additionally, his request for sick leave was denied and he was put on leave without pay for the entire period of his absence, excluding the one day covered by the original medical certificate submitted. The primary reasons for this disciplinary action were: 1) insubordination in failing to comply with a direct order to report his absence to a particular supervisor, and 2) improperly attempting to use sick leave for purposes other than those authorized by the civil service rules, action considered to be falsification of payroll documents.
Ferguson filed a timely appeal of this disciplinary action with the Civil Service Commission. Following a hearing before a referee, the Commission rendered an opinion upholding the disciplinary action taken by the appointing authority. Ferguson has now appealed to this Court.
Prior to the practice of using referees to conduct hearings, the scope of appellate review in Civil Service Commission cases was basically the same as in other civil matters. Wollerson v. Department of Agriculture, 436 So.2d 1241 (La.App. 1st *168 Cir.1983), writ denied, 441 So.2d 1221 (La. 1983). However a less restrictive standard of review is now applied in cases involving hearings conducted before referees, with the appellate court making an independent review of the record to determine whether the Commission's conclusions are arbitrary, capricious or manifestly wrong. Wollerson, supra.
Legal cause exists for disciplinary action against a permanent, classified civil service employee whenever that employee's conduct is detrimental to the efficient and orderly operation of the public service for which he was employed. Thornton v. DHHR, 394 So.2d 1269 (La.App. 1st Cir. 1981). The appointing authority bears the burden of proving such conduct by a preponderance of the evidence, which means the evidence, as a whole, must show the fact sought to be proven as more probable than not. To constitute a preponderance, the evidence must be of a greater weight or more convincing than that offered in opposition thereto. Thornton, supra; Jones v. Dept. of Health & Human Resources, 430 So.2d 1203 (La.App. 1st Cir. 1983).
With respect to the charge of insubordination, LeGrange stated that although it was not normal procedure, he had given Ferguson a direct order to report his absences to LeGrange personally. LeGrange explained this order resulted from an earlier incident in which he experienced a problem locating Ferguson during working hours.[1] It is undisputed Ferguson did not report his absence to LeGrange personally, but rather sent a message through another employee. This action was insufficient to comply with LeGrange's direct order.
On appeal, Ferguson argues this order was unreasonable and difficult to comply with. We disagree. The importance of a supervisor knowing the location of his employees is patently obvious. Additionally, LeGrange had experienced a previous problem in keeping track of Ferguson's location. Nor do we believe it would have been unduly difficult for Ferguson to comply with this order. Even though Ferguson was absent from work for nearly three weeks, there is no evidence he made more than one attempt to contact LeGrange. Accordingly, we find the appointing authority has proven its charge of insubordination by a preponderance of the evidence.
The other major charge against Ferguson was that of attempted abuse of sick leave. Under Civil Service Rule 11.13(a) sick leave may be utilized for: 1) illness or injury preventing an employee from performing his usual duties, or 2) medical, dental or optical consultation or treatment. No other uses of sick leave are authorized. Rule 11.14 permits an appointing authority to require a doctor's statement or other acceptable proof of illness or inability to work. It is the policy of DHHR, the appointing authority herein, to require such a statement when an employee claims sick leave for more than two consecutive days.
Ferguson argues the Commission erred in concluding he was not ill during the period of his absence, without any supporting medical evidence to this effect. We conclude there was sufficient evidence presented by the appointing authority to prove this charge. Although Ferguson submitted a medical certificate upon his return to work, the appointing authority refused to accept it in light of information obtained subsequently which cast doubt upon the accuracy of this certificate and suspicion upon the circumstances under which it was obtained. We conclude this refusal was justified under the circumstances present.
Despite having earlier signed this medical certificate, Ferguson's own physician later indicated he did not know whether or not Ferguson was capable of performing *169 his job on the dates of the CPA examination. The CPA exam is a particularly difficult and demanding one. The stress it placed upon Ferguson was similar to that encountered in the performance of his usual duties. Considering the evidence as a whole, it preponderates to establish Ferguson was capable of performing his usual job duties on the dates in question. Accordingly, he abused DHHR's leave policy by attempting to utilize sick leave for time used to take the CPA examination.
Lastly, Ferguson argues the charges against him, even if proven, were insufficient to justify the disciplinary action taken. We disagree. Ferguson's abuse of leave policy and failure to obey a direct order are actions which, by their very nature, impair the efficient operation of the public service for which he was employed. We find the extremely serious nature of these charges, considered together with the hostile and uncooperative attitude displayed by Ferguson, warranted his 45 day suspension. Additionally, since Ferguson failed to furnish acceptable proof of illness as was required in order to claim sick leave, the appointing authority was justified in placing him on leave without pay, pursuant to Rule 11.27(g), for the period of his unauthorized absence.
Accordingly, from our independent review of the record, we find the Commission's conclusions were not arbitrary, capricious or manifestly wrong.
AFFIRMED.
NOTES
[1] On this earlier occasion Ferguson left his assigned job site in New Orleans in order to see his doctor in Baton Rouge. LeGrange was aware of this appointment and requested Ferguson notify him as to whether or not he would be able to return to New Orleans. Ferguson did not return to New Orleans for several days. However, he failed to inform LeGrange of this fact. Consequently, LeGrange erroneously assumed Ferguson was on the job in New Orleans.