498 So.2d 266 (1986)
Jerry L. WELLS
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, LOUISIANA STATE PENITENTIARY.
No. CA 85 1044.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
*267 Stacey Moak, Cicero and Moak, Baton Rouge, for appellant.
Jean G. Ray, Asst. Atty. Gen., Dept. of Justice, Corrections Section, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civ. Service Legal Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall.
Before EDWARDS, WATKINS and LE BLANC, JJ.
LE BLANC, Judge.
Appellant, Jerry Wells, appeals a decision of the Louisiana Civil Service Commission (Commission) upholding two disciplinary actions against him, one resulting in a three (3) day suspension and the other in a demotion. Although a joint hearing was held on these two disciplinary actions, they are completely unrelated and will be considered separately herein.

SUSPENSION
On September 17, 1982, appellant was employed with permanent status by the Louisiana Department of Corrections (Department) as a Corrections Major at Louisiana State Penitentiary (Angola). At approximately 1:00 p.m. on that date Eugene Jacobs, one of the inmates in Camp J, set fire to the mattress in his cell. After the fire was extinguished, appellant issued a memorandum ordering that everything, including *268 all of Jacobs' clothing, be removed from his cell. This order was to remain in effect until rescinded by appellant.
Under a memorandum issued by Warden Maggio on January 7, 1982, an inmate who had engaged in self-destructive behavior could be completely stripped of clothing, with the exception of a pair of boxer shorts, if necessary to prevent injury to himself or others. The memorandum provided that an inmate was not to be kept without clothing longer than twenty-four (24) hours unless renewed authorization was given by one of several designated mental health professionals.
The record does not clearly reflect how long Jacobs was without clothing. The Department's contention that it was for two (2) weeks is sharply disputed by appellant. Although appellant admitted he did not know the length of this period, he thought it was probably in the range of three to four days. However, certain facts in the record indicate the period may have been much longer. For instance, on October 1, 1982, clothing which Jacobs had obtained by unknown means was seized from him and he was put on disciplinary report for having it in his possession, suggesting that appellant's order was still in effect. Additionally, the personal inventory sheet prepared upon the initial seizure of Jacobs' clothes indicates these items were not returned until October 14, 1982.
There is no evidence the appropriate mental health employees ever authorized the continuation of appellant's strip order. It was on this basis that the Department charged appellant with failing to properly perform his duties. Specifically, the Department charged that appellant failed to coordinate his order with the mental health department, thereby causing Jacobs to be without any clothing for an excessive period without proper authorization.
Legal cause for disciplinary action against a permanent, classified civil service employee exists whenever that employee's conduct is detrimental to the efficient and orderly operation of the public service for which he was employed. Ferguson v. Department of Health and Human Resources, 451 So.2d 165 (La.App. 1st Cir. 1984). The appointing authority bears the burden of proving such conduct by a preponderance of the evidence, which means the evidence, as a whole, must show the fact sought to be proven as more probable than not. Id.
In this appeal, appellant argues that at the time in question there was no clearly defined procedure at Angola for notifying the mental health department in cases such as the present one. He maintains his actions were proper under the circumstances present. In support thereof, appellant testified he telephoned the mental health department on the Friday afternoon of the fire and spoke to either Dr. Towns, the Director of the Mental Health Department, or his secretary. Appellant also testified he was almost certain that upon returning to work on Monday morning, he again spoke to Dr. Towns and requested that he examine Jacobs.
No evidence corroborating these claims was introduced. Dr. Towns testified he was not present at Angola on the afternoon of the fire and, in fact, had never discussed this incident or Jacobs with appellant.
Our review of the record reveals no manifest error in the Commission's finding that appellant failed to properly perform his duty. Even accepting as true appellant's assertions that he contacted the Mental Health Department on Friday afternoon and Monday morning, his efforts were totally inadequate. Since the order issued by him was of indefinite duration, it was incumbent upon appellant to ensure it did not remain in force longer than twenty-four (24) hours without proper authorization. Appellant was less than diligent in fulfilling this duty, having apparently abandoned any efforts to obtain proper authorization after a relatively short period of time. Additionally, it should be noted that appellant's order exceeded the scope of the January 7th memorandum since he did not permit *269 Jacobs to retain a pair of undershorts as provided in the memorandum[1].
Further, we reject appellant's argument that even if a breach of duty occurred, it did not impair the efficient and orderly operation of the public service for which he was employed. A failure by employees to follow prescribed policies and procedures intrinsically weakens the orderly operation of a public institution and may lead to abuses of discretion. We find that a three (3) day suspension is commensurate with appellant's conduct. Accordingly, the judgment of the Commission in this matter is affirmed.

DEMOTION
On May 4, 1983, appellant was a camp major, responsible for the operation of Camp J, a maximum security area at Angola. At a meeting attended by appellant on March 8, 1983, all majors were instructed by their supervisor, Lt. Colonel Boeker, to notify him if they were going to be absent from work for any reason. Subsequently, Boeker issued a written memorandum to this same effect.
While at work on May 4, 1983, appellant began experiencing chest pains. Since Boeker was unavailable at that time, appellant contacted Assistant Warden Butler, who suggested he leave work and see a doctor. On his way out appellant encountered Boeker and informed him of his illness. The substance of the remainder of their conversation is in dispute. Appellant maintains he told Boeker he would keep him informed of any absences through the control tower and Boeker acquiesced. However, Boeker testified he told appellant to take the rest of the day off, to see a doctor and to contact him directly the following day as to whether he would be back at work.
Boeker stated that it was necessary for him to know as soon as possible if any majors were going to be absent so that he could make arrangements to cover their positions. Boeker made the decision to have majors contact him directly because he had experienced some problems getting messages from the control tower. He testified that even when he did receive a message from the control tower, several hours had usually passed before it reached him.
In any event, appellant was absent from work from May 5 through May 17, 1983. He never contacted Boeker directly, but did report his absences to personnel in the control tower. This fact is not disputed. It is also not disputed that appellant was under a physician's care during the entire period of his absence.
The Commission concluded appellant had been specifically instructed to contact Boeker directly regarding any absences, but had failed to comply. Contacting the control tower was considered inadequate to constitute compliance with Boeker's order. From our review of the record, we find no manifest error in these conclusions. See Ferguson, supra at p. 168.
Appellant further argues that his conduct could not constitute legal cause for disciplinary action because it did not impair the efficient operation of Camp J. We disagree. An employee's refusal to obey a direct order is conduct which, by its very nature, impairs the efficient operation of the public service for which he was employed. Ferguson, supra at p. 169. This is especially true when considering the conduct of an employee of a penal institution, where the chain of command and obedience to orders may mean the difference between life and death or order and disorder. Malone v. Dept. of Corr., La. Training Inst., 468 So.2d 839 (La.App. 1st Cir.1985). Such employees are held to a strict duty to obey the orders of their superiors. Id.
For the above reasons, the disciplinary action demoting appellant to the rank of captain is affirmed.
*270 Appellant is to pay all costs of appeal.
AFFIRMED.
NOTES
[1] Actually, it is not clear that appellant even had the authority under the January 7th memorandum to issue a strip order. However, it is not necessary to reach this issue since we have concluded on other grounds that appellant did not properly comply with the terms of this memorandum.