598 So.2d 515 (1992)
Simmie BANKS, Jr.
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, LOUISIANA TRAINING INSTITUTEEAST BATON ROUGE.
No. CA 91 0136.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
*516 Mark E. Falcon, Avant and Falcon, Baton Rouge, for appellant.
Victoria F. Suplee, Staff Atty., Dept. of Public Safety and Corrections, Office of the Gen. Counsel, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civil Service Gen. Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director, Department of State Civil Service.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
GONZALES, Judge.
This appeal from a decision of the Civil Service Commission involves whether defendant, the Department of Public Safety and Corrections ("Department"), can discharge an employee for failure to submit to a drug test. The Civil Service Commission ("Commission") denied plaintiff's appeal of his termination. Plaintiff now appeals to this court and makes the following assignments of error:
1) The Commission erred in finding "cause" sufficient to warrant disciplinary action.
2) The Commission erred in failing to find that the direct order to submit to drug urinalysis, in the absence of a promulgated and disseminated policy, was unreasonable and violative of appellant's constitutional right to privacy.
3) The Commission erred in finding that the appointing authority had reasonable suspicion to believe that appellant was recently involved in the purchase and consumption of illegal drugs sufficient to authorize the direct order to appellant to submit to urinalysis.
4) The Commission erred in finding that appellant's request that he first consult an attorney concerning his constitutional rights was a refusal to comply with his supervisor's directives.
5) Alternatively, the Commission erred in failing to reduce the penalty to one less severe than termination.
6) The Commission erred in failing to award reasonable attorney's fees.
In reviewing the constitutional validity of mandatory drug testing by the government of its employees, the Supreme Court has held that the government's interests in conducting such a search without a warrant or reasonable suspicion must be weighed against the privacy interests of the employees. Skinner v. Railway Labor Executives' Association, 489 U.S. 602, 109 S.Ct. *517 1402, 103 L.Ed.2d 639 (1989); National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). In Skinner, the Court examined the Federal Railroad Administration ("FRA") regulations requiring blood and urine tests of employees who are involved in certain train accidents, and authorizing breath and urine testing of employees who violate certain safety rules. 109 S.Ct. at 1407. Initially, the Supreme Court concluded that the collection and subsequent analysis of the requisite biological samples, with the Government's encouragement, endorsement, and participation, must be deemed Fourth Amendment searches. 109 S.Ct. at 1412-1415. Noting that the permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests[1] against its promotion of legitimate governmental interests"[2], the Court concluded that the toxicological testing contemplated by the regulations is not an undue infringement on the justifiable expectations of privacy of covered employees; the Government's compelling interests outweigh privacy concerns. 109 S.Ct. at 1414-1421.
The Von Raab case involved the United States Customs Service ("Customs"), which is responsible for the interdiction and seizure of illegal drugs smuggled into the country. Customs implemented a drug screening program requiring urinalysis tests from employees seeking transfer or promotion to positions having a direct involvement in drug interdiction or requiring the incumbent to carry firearms or to handle "classified" material. 109 S.Ct. at 1387-1388. The Customs drug program requires that an applicant be notified that his selection is contingent on successful completion of drug screening, provides that test results may not be turned over to any other agency, including criminal prosecutors, without the employee's written consent, and sets forth procedures: for collection and analysis of the requisite samples, to ensure against adulteration or substitution of specimens, and limiting the intrusion on employee privacy. Id. The Von Raab Court reiterated the Skinner holding that federal regulations requiring employees to produce urine samples for chemical testing implicate the Fourth Amendment, as those tests invade reasonable expectations of privacy; therefore, such a search must meet the reasonableness requirement of the Fourth Amendment.[3] 109 S.Ct. at 1390. Further, neither a warrant nor probable cause is an indispensable component of reasonableness in every circumstance. Id. The Von Raab Court went on to find a warrant unnecessary since it would provide little or no additional protection of personal privacy, covered employees know when they are subject to a drug test, they are aware of the requisite procedures, and are not subject to a discretionary determination. 109 S.Ct. at 1391. The Supreme Court also noted that even where it is reasonable to dispense with the warrant requirement in the particular circumstances, a search ordinarily must be based *518 on probable cause. Id. However, the Government's need[4] to conduct the suspicionless searches required by the Customs program was found to outweigh the privacy interests of employees engaged directly in drug interdiction, and of those who otherwise are required to carry firearms.[5] 109 S.Ct. at 1392.
Because neither Skinner nor Von Raab dealt with a search based on probable cause outside the framework of a pre-existing drug testing scheme, as in the present case, they offer very little guidance in this matter. Implied in both of these cases, however, is that a governmental employer's order to an employee to submit to a drug test on the basis of individualized suspicion of drug use is constitutionally valid in certain circumstances. Additionally, Skinner, 109 S.Ct. at 1413, does cite without rejecting the case of McDonell v. Hunter, 809 F.2d 1302 (8th Cir.1987) and Fraternal Order of Police, Lodge No. 5 v. Tucker, 868 F.2d 74 (3d Cir.1989), which more closely address the issue with which we are presently concerned.
The McDonell case concerned a correctional officer at an Iowa men's reformatory who had signed a consent to search form when first employed, and later was asked to undergo a urinalysis because he had been seen with individuals who were being investigated for possible drug-related activities. Mr. McDonell refused to submit to the test and was terminated, though he was later reinstated with the loss of ten days pay and transferred to another institution. The Eighth Circuit conducted the Fourth Amendment balancing test and determined the government concerns included: a strong need to see that prison guards are not working while under the influence of drugs or alcohol, safety concerns dictating that prison security personnel who have contact with inmates be alert at all times, and that drug use by a correction officer is some positive indication that such officer may bring drugs into the prison for the use of the inmate. Additionally, the court determined that while correction officers retain certain expectations of privacy, based on their place of employment, their subjective expectations of privacy are diminished while they are within the confines of the prison. The McDonell court reached the following conclusions:
Urinalysis testing within the institution's confines, other than uniformly or by systematic random selection of those employees so designated, may be made only on the basis of a reasonable suspicion, based on specific objective facts and reasonable inferences drawn from those facts in light of experience that the employee is then under the influence of drugs or alcohol or that the employee has used a controlled substance within the twenty-four hour period prior to the required test. The demand for a urine, blood, or breath specimen should be made only on the express authority of the highest officer present in the institution, and the specific, objective facts should be disclosed to the employee at the time the demand is made. Strict guidelines should be established and followed to assure confidentiality of the results of urinalysis testing. Whether the testing is on the limited random basis approved above or on the basis of reasonable suspicion, the equipment and procedure to be used must provide sufficient guarantees of trustworthiness to permit the authorities to accurately determine the presence or absence of both drugs *519 and alcohol in the urine. The equipment and procedure to be used shall conform to those described and approved by this court in Spence v. Farrier, 807 F.2d 753 (8th Cir.1986).
The trial court limited the right to test on reasonable suspicion to those employees who are "then under the influence of alcoholic beverages or controlled substances." We do not agree with this limitation and hold that urinalyses testing should also be permitted where there is a reasonable suspicion (as defined herein) that controlled substances have been used within the twenty-four hour period prior to the required test. [809 F.2d at 1309.]
The propriety of a urinalysis test not ordered pursuant to a random drug urinalysis program was also considered in Fraternal Order of Police, Lodge No. 5 v. Tucker, 868 F.2d 74 (3d Cir. 1989). That case involved four City of Philadelphia Police officers, who an anonymous informant had reported congregating and behaving unusually behind some neighborhood tennis courts; the officers were reported as apparently using drugs and "acting crazy." An internal affairs surveillance team conducted an investigation corroborating the information received; the officers were identified, reckless and bizarre driving and what appeared to be drug activity were observed, and items consistent with the use of "crack" were recovered from the area in question. The officers were ordered to submit to urinalysis testing, which they refused; a suspension and dismissal followed. The Tucker court, citing Copeland v. Philadelphia Police Department, 840 F.2d 1139 (3d Cir.1988), cert. denied, 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), held that the appropriate standard is whether the department had a reasonable suspicion that a particular officer was a user of illegal drugs. 868 F.2d at 77. Factors important to consider in making such an evaluation were enumerated as: (1) the nature of the tip or information; (2) the reliability of the informant; (3) the degree of corroboration; and (4) other facts contributing to suspicion or lack thereof. Tucker, 868 F.2d at 78; Security and Law Enforcement Employees, District Council 82 v. Carey, 737 F.2d 187, 205 (2d Cir.1984).
Applying the principles announced in McDonell and Tucker to the instant case, we are unable to conclude that the constitutional rights of Mr. Banks were violated. The Commission made the following findings of fact:
1. On Thursday, September 21, 1989, Carlo Messina, of Corrections Internal Affairs received a phone call from Don Connor of the East Baton Rouge Sheriff's Office in reference to a Correctional Officer named Banks who was employed at Louisiana Training InstituteEast Baton Rouge.
2. Connor advised Mr. Messina that earlier that same day, appellant had been observed entering and leaving a "crack house" which was under surveilance [sic] by the narcotics units of the Sheriff's Office. Additionally, he advised Messina that a Confidential Informant inside the house stated that he had observed appellant smoking crack while he was inside the house.
3. Mr. Messina contacted Don Wydra, Assistant Secretary for Juvenile Services and advised him of the information received from the Sheriff's department.
4. Mr. Wydra instructed Reginald Parquet, Superintendent of Louisiana Training InstituteEast Baton Rouge and George White, Deputy Assistant Secretary to contact appellant and order him to submit to a drug analysis.
5. George White was unable to contact appellant prior to his regularly scheduled time to report for duty at 6:00 p.m. on September 22, 1989. By the time appellant reported for duty, the lab at which the drug screen was to be done was closed.
6. At or near the conclusion of his shift at 6:00 a.m. on September 23, 1989, appellant was ordered to report to Superintendent Parquets' [sic] office.
7. George White ordered appellant to report to the Louisiana Reference Laboratory at 8:00 a.m. for a drug analysis, advising appellant that the department *520 had received information that he was using drugs.
8. Appellant did not comply with Mr. White's order.
9. The introduction of contraband, particularly controlled substances, into juvenile facilities is a serious breach of security and is an area of great concern to Corrections' [sic] Officials.
Additionally, a review of the record of testimony presented to the Commission reveals that Sergeant Brian White of the Sheriff's office, who was monitoring the "crack house" while the confidential informant went inside, observed Mr. Banks in his Corrections uniform entering and leaving the house.
Mr. Banks admitted that when called into Mr. Parquet's office, where he was told the Department had received information that he was using illegal drugs; further, Mr. White ordered him to report for a urinalysis test. Mr. Banks testified that he asked for more information about the accusations, but was refused. Mr. Parquet related that Mr. Banks was informed he had been seen in a "crack house" either purchasing or using drugs, and requested that he submit to a drug test. Mr. Parquet did state that Mr. Banks wanted to know the source of the information, but that he was advised that it could not be divulged at that time. It was undisputed that Mr. Banks was ordered to report for urinalysis testing and that he failed to do so.
Although Mr. Banks stated that at no time during his employment at the LTI was he informed that he would be subject to drug testing, he did admit that he knew as a condition of his employment he was subject to: a bodily search or "shake-down" on a random basis, vehicle shake-down, and possibly a strip search. Mr. Banks admitted that he knew the Corrections Services Rulebook prohibited employees from violating state or federal law and that to do so could result in termination.
Legal cause exits for disciplinary action against a permanent, classified civil service employee whenever that employee's conduct is detrimental to the efficient and orderly operation of the public service for which he was employed. Ferguson v. Department of Health and Human Resources, Office of Management and Finance, 451 So.2d 165 (La.App. 1st Cir. 1984); Thornton v. DHHR, 394 So.2d 1269 (La.App. 1st Cir.1981). An employee's refusal to obey a direct order is conduct which, by its very nature, impairs the efficient operation of the public service for which he was employed. Wells v. Department of Public Safety and Corrections, Louisiana State Penitentiary, 498 So.2d 266 (La.App. 1st Cir.1986); Ferguson, 451 So.2d at 168. This is especially true when considering the conduct of an employee of a penal institution, where the chain of command and obedience to orders may mean the difference between life and death or order and disorder.[6]Wells, 498 So.2d at 269; Malone v. Department of Corrections, Louisiana Training Institution Ball, 468 So.2d 839 (La.App. 1st Cir. 1985).
The standard of review to be applied in reviewing holdings of the Civil Service Commission is the manifest error standard. Malone, 468 So.2d at 841. The findings of the Commission were as follows:
In the present appeal there is no dispute as to the facts set forth in the letter of termination. The core issue of this matter is the validity of the direct verbal order given to appellant on the morning of September 23, 1989. The Referee finds that there is no question that urinalysis is a search and seizure within the meaning of the fourth amendment. Due to the nature of appellant's employment it becomes necessary to balance the state's interest in safeguarding the security *521 of its correctional institutions against appellant's fourth amendment rights.
The Referee concludes that based upon the information imparted to the Department of Public Safety and Corrections by the head of the East Baton Rouge Parish Sheriff's Office Narcotics Division, that appellee had reasonable suspicion that appellant was quite recently involved in the purchase and consumption of illegal drugs. The Referee finds that the ultimate truth or accuracy of the sheriff's department's information is not at issue in this appeal, but, rather, it is the action of the Department of Public Safety and Corrections upon receipt of the information which is being scrutinized herein.
Upon being advised of appellant's alleged actions of September 21, 1989 appellee had a legitimate interest in determining whether or not appellant was in fact using illegal drugs or under the influence of a controlled substance. One valid concern is that employees who come into direct contact with juvenile offenders are not inhibited by drugs and are alert and fully capable of performing their duties. Another legitimate concern is that a correctional officer identified as purchasing controlled substances may be much more likely to be involved in the introduction of contraband into a correctional facility. The Referee further notes that the Employee Rules and Procedure Manual contains a Rule 13.(0) which prohibits employees from engaging in criminal activity.
Failure to follow a direct order has been found to constitute cause for disciplinary action in the context of the chain of command in a correctional institution. The Referee concludes that appellee had reasonable suspicion that appellant was involved in the use of illegal drugs and had a legitimate interest in either confirming or allaying that suspicion....
Based on the circumstances presented in this case, we are unable to say that the Commission was manifestly erroneous in its findings.[7]
For these reasons the judgment upholding plaintiff's termination is affirmed; all costs of this proceeding to be borne by plaintiff/appellant herein.
AFFIRMED.
LOTTINGER, J., dissents.
NOTES
[1] Factors considered which protect an individual's privacy interest and militate against the need for a warrant or probable cause were found to include: narrowly defined limits of intrusion, known to covered employees, standardized nature of the tests, minimal discretion vested in administrators, and general submission by employee to significant restrictions in his freedom of movement as a condition of employment.
[2] The Government's interests were outlined as: employees subject to testing under the FRA regulations can cause great human loss before any signs of impairment become noticeable to supervisors or others, FRA regulations supply an effective means of deterring employees engaged in safety-sensitive tasks from using controlled substances or alcohol in the first place, and the delay necessary to procure a warrant may result in the destruction of valuable evidence.
[3] As pointed out by appellant, our state constitution's declaration of the right to privacy contains an affirmative establishment of a right of privacy; this constitutional declaration of right is not a duplicate of the Fourth Amendment or merely coextensive with it, it is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution. State v. Church, 538 So.2d 993 (La.1989); State v. Hernandez. 410 So.2d 1381 (La.1982). However, both the Fourth Amendment and Article I, § 5 protect only reasonable expectations of privacy. State v. Harrington, 430 So.2d 394 (La.App. 3d Cir.), writ denied, 435 So.2d 433 (La. 1983).
[4] The Court list the government interests in precluding drug users from the ranks of the Customs Service: Customs employees are often exposed to the criminal element involved in narcotics importation and to the controlled substances they seek to smuggle into the country, the physical safety of the employees may be threatened, and many may be tempted not only by bribes from the traffickers but also by their own access to vast sources of valuable contraband seized by Customs; the Government has a compelling interest in ensuring that front-line interdiction personnel are physically fit, and have unimpeachable integrity and judgment.
[5] Although Von Raab upheld Customs regulations with regard to employees handling weapons and "classified materials", the matter was remanded for a determination as to whether the category of employees subject to testing was overbroad insofar as it included other personnel (such as: accounting technicians, animal caretakers, attorneys, baggage clerks, etc.).
[6] Appellant cites the case of Department of Public Safety and Corrections, Washington Correctional Institute v. Miller, 562 So.2d 477 (table) (La.App. 1st Cir.1990), in support of his position that he was justified in refusing the order given. We find the Miller case distinguishable on the facts and therefore unsupportive of appellant's arguments. Further, we note sua sponte that appellant has violated Rule 2-16.3 of the Uniform Rules for Courts of Appeal in citing an opinion marked "Not Designated for Publication", and we hereby strike the citation from his brief.
[7] We note that Tucker, 868 F.2d at 80, applying Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), also holds that a public employee who has a property interest in his or her employment is entitled to a meaningful pre-termination hearing, during which a sufficient explanation of the employer's evidence against the employee is given to allow a meaningful response by the employee. Procedural due process provides this right only prior to deprivation of employment, not during the departmental investigation or prior to an order to submit to a drug test. 868 F.2d at 80-81. However, in the instant case, plaintiff waived "any claims to due process as it pertains to Loudermill and the opportunity for a hearing prior to termination."