JOAN BERNARD ARMSTRONG, Chief Judge.
hThe plaintiff-appellant, Earl Razor (“Razor”), appeals a ruling against him and *3 in favor of the defendant-appellee, the New Orleans Police Department (“NOPD”), by the Civil Service Commission upholding Razor’s termination of employment from the NOPD. For the reasons that follow, we affirm.
Razor was hired as a police officer with the NOPD on September 29, 1996. On or about June 9, 2003, Razor was part of a drug investigation at the Econo Lounge on Tulane Avenue in New Orleans. The NOPD received a tip from a confidential informant who claimed to know the identity of the drug dealer who supplied the heroin involved in a drug overdose at the Econo Lounge earlier that same day. The police conducted a surveillance and investigation that called for the informant to contact the suspected dealer, Richmond “Cash” Hamilton (“Hamilton”), and arrange to meet with him in a room at the Econo Lounge. When Hamilton arrived, he refused to go to the informant’s room. Subsequently, Narcotics Detective Steven Payne stopped Hamilton in the lounge area and conducted a pat-down search. Officer Payne testified that he pulled back Hamilton’s waistband and observed what he believed to be several packets of heroin in Hamilton’s buttocks area. He did not immediately arrest Hamilton for pdrug possession because he did not want Hamilton to suspect that he had been set up by the informant. Instead, Officer Payne arrested Hamilton for trespassing.
After he arrived at the station, the police officers, could not find the heroin. Nevertheless, Hamilton was booked for possession of heroin. On the ride to Central Lock-Up, Hamilton informed Sergeant William Ceravola that a black officer (referring to Razor) had stood watch over him prior to his transport to the station. During this time, the heroin fell from his pants, Razor allegedly picked it up and told Hamilton not to tell anyone about it.
Hamilton’s allegations were reported to Sergeant Lerrol Foy of the Public Integrity Unit. Sgt. Foy took statements from Sgt. Ceravola, Officer Payne and from Hamilton. Based on these statements, Sgt. Foy obtained a warrant to search Razor’s house and the police car assigned to Razor. Drugs were not found in Razor’s house; however, officers found cocaine residue wrapped in cellophane in the glove compartment of his car.
As a result of these findings, Razor was ordered to undergo a “reasonable suspicion” drug test. The test results were positive for cocaine. Razor received an immediate one hundred twenty day suspension on June 26, 2003.
On September 18, 2004, Deputy Superintendent Warren J. Riley, Chief Operations ■ Officer, held a hearing to review Razor’s suspension. After that hearing, the Superintendent of Police, Edwin Compass, III, approved the recommendation to suspend Razor for the eighty-three calendar days already served and to dismiss him from the NOPD. Razor appealed this action to the Civil Service Commission.
The Civil Service Commission consolidated Razor’s suspension and termination into one proceeding. At the conclusion of the hearings, the hearing ^officer, Harry S. Tervalon, Jr., recommended that the appeal be denied. Thereafter, on July 19, 2004, the Civil Service Commission formally denied the appeal. It is from this denial of his appeal to the Civil Service Commission that Razor appeals to this Court.
The Louisiana Constitution of 1974 established the City Civil Service, which includes paid firemen and municipal policemen. La. Const art. X, Sec. 1(B); George v. Department of Fire, 93-2421, (La.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1101; Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984). The bur *4 den of proof on appeal to the Civil Service Commission from a disciplinary action as to the factual basis for the disciplinary action is on the appointing authority, which in the instant case is the NOPD. Walters v. Department of Police of City of New Orleans, 454 So.2d 106 (La.1984); Goins v. Department of Police, 570 So.2d 93 (La.App. 4 Cir.1990).
The Civil Service Commission has the duty to decide independently from the facts presented whether the NOPD had good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Walters, supra; George, supra. This is significant in the instant case, because while the Civil Service Commission affirmed the decision of the hearing officer, it did so for different reasons, which it is entitled to do. Legal cause exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990). The appointing authority has the burden of proving by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service. Id.; George, supra. While these facts must be clearly established, they |4need not be established beyond a reasonable doubt. Id. This Court applies the clearly wrong/manifest error standard of review to the commission’s factual findings. George v. Department of Police, 93-2421, p. (La.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1101. When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Id.; Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4 Cir.1993). The Commission’s findings of fact cannot be manifestly erroneous where there are two permissible views of the evidence. Id.; George, supra. When reviewing a Commission conclusion as to the existence or absence of cause for dismissal, the appellate court should not reverse the Commission’s decision unless it is arbitrary, capricious, or is an abuse of discretion. Id.; Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 112 (La.1984).
The Civil Service Commission found that:
The Appointing Authority has established by a preponderance of the evidence that the Appellant had cocaine in his system at the time that he submitted to a drug screening. As such, the Appellant has no defense to the charges that resulted in his termination.
The appellant, Razor, does not challenge the results of the drug test. Nor does Razor challenge the legality of the search warrant that led to the discovery of the cocaine residue which in turn was a major factor used by the NOPD to justify the “reasonable suspicion” drug test that led to his suspension and eventual termination by the NOPD.
Razor complains that the Civil Service Commission committed manifest error in failing to recognize that the NOPD violated his rights pursuant to La. R.S. 40:2531 et seq., commonly known as the “police officer’s bill of rights.” Specifically, La. R.S. 40:2531B(7) provides in part that “each investigation of a 1Jaw enforcement officer shall be completed within sixty days.” (Emphasis added.) Razor notes that his investigation on June 9, 2003, and concluded with his termination on September 18, 2003. Razor argues that the term “investigation” in La. R.S. 40:2531B(7) should be read broadly to include “investigation and discipline,” not just investigation. As the period from the beginning of the investigation on June 9, *5 2003, through the time of his termination on September 18, 2003, exceeds sixty days, it does not meet the mandatory requirements of La. R.S. 40:2531B(7). The NOPD counters that the sixty day limit set forth in La. R.S. 40:2531B(7) should be deemed advisory in nature, rather than mandatory or imperative, relying on Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641. Bannister involved an agency rule that the NOPD contends is analogous.
While we note that this Court recently rejected a similar argument made by the NOPD based on Bannister in Davis v. New Orleans Police Department, 04-1023 (La.App. 4 Cir. 2/2/05), 899 So.2d 37, we find no evidence in the record that Razor raised this issue in any of the proceedings below, i.e., Razor attempts to raise the issue of the sixty day time limit for investigations set forth in La. R.S. 40:2531B(7) for the first time in his appellate brief to this Court.
Appellate courts generally may not consider any question which has not been determined by the court of original jurisdiction. Durmeyer v. Streiffer, 215 La. 585, 41 So.2d 226 (1949). Issues not urged in the court below or raised by the pleadings cannot be considered on appeal. Crichton v. Lee, 209 La. 561, 25 So.2d 229, 235 (1946). The general rule is that appellate courts will not consider issues raised for the first time on appeal. Spaht v. Sewerage and Water Bd. Of City of New Orleans, 02-2125, p. 5 (La.App. 4 Cir. 7/2/03), 851 So.2d 1242, 1245; Landry v. Latter, 00-0100 (La.App. 4 Cir. 12/27/00), 780 So.2d 450. Accordingly, we will not consider Razor’s arguments concerning the sixty day period set forth in La. R.S. 40:2531B(7).
Razor also complains that the Civil Service Commission committed manifest error in finding that the appointing authority had “reasonable suspicion” in ordering him to submit to a drug test.
Again we note, Razor does not challenge the results of his drug test. Nor does he challenge the legality of the search warrant that led to the discovery of the cocaine residue which in turn was a major factor used by the NOPD to justify its “reasonable suspicion” drug test that led to Razor’s suspension and eventual termination by the NOPD. The crux of Razor’s argument concerning the “reasonable suspicion” drug test is that the cocaine residue discovered in his vehicle pursuant to the search warrant was not sufficiently suspicious to justify requiring him to undergo drug testing.
Civil Service Rule 5, Paragraph 9.12 provides that:
An employee shall be required to participate in the substance abuse screening procedure if there exists reasonable suspicion (Category III) to believe that the employee’s fitness for duty is questionable based upon the following criteria:
(a) Any observable, work related behavior or similar pattern of conduct that appears to be abnormal, erratic or similar pattern of conduct that appears to be abnormal, erratic or otherwise not in conformance with acceptable City policy.
(b) Any observable, work related behavior or similar pattern of conduct that indicates signs of impairment in normal sensory and/or motor body functions.
(c) Any articulable facts or evidence that indicates possible substance abuse on the job.
|7(d) Any information or evidence that warrants, or emanates from, an authorized investigation of possible drug related activity by a specific individual or group.
*6 (e) Any pattern of alcohol and/or drug related behavior, conduct or activity that is violative of municipal, state or federal law.
The same standards are set forth in the New Orleans Police Department Operations Manual, Chapter 13.21(6). There is no evidence in the record concerning erratic or abnormal behavior on Razor’s part. Therefore, criterion “(a)” above is not applicable. The NOPD ■ does not contend otherwise. There is' no evidence in the record of any signs of impairment in normal sensory and/or motor body functions. Therefore, criterion “(b)” above- is not applicable. The NOPD does not contend otherwise. There is no evidence in ■ the record of any pattern ,of alcohol and/or drug related behavior, conduct or activity. Therefore, criterion “(c)” above is not applicable. The . NOPD does not contend otherwise. There. is no evidence in the record, of any articulable facts or evidence that indicates possible substance abuse on the job. The NOPD does not contend otherwise. Therefore, criterion “(e)” above is not applicable.
Accordingly, this appeal must focus on whether reasonable suspicion existed to trigger a random drug test under criterion “(d)” concerning the existence of evidence emanating from an authorized investigation of possible drug related activity.
Initially, we note that the Fourth Amendment of the United States Constitution prohibition against unreasonable searches and seizures by government officials is applicable to the states via the Fourteenth Amendment. State v. Church, 538 So.2d 993 (La.1989); George, supra. The Louisiana Constitution [¿protects against unreasonable invasions of privacy as well as unreasonable searches and seizures. Church, supra; George, supra; La. Const. art. I, Sec. 5.
Furthermore, the collection and subsequent analysis of biological samples for the purpose of drug testing with government encouragement, endorsement, and participation are Fourth Amendment searches. Skinner v. Railway Labor Executives’ Association, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); George, supra. Therefore, such searches must -meet the reasonableness requirements of the Fourth Amendment. National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).
Factors to be considered in determining whether reasonable suspicion exists to warrant a non-random drug test include:
1. the nature of the tip or information;
2. the reliability of the informant;
3. the degree of corroboration; and
4. other facts contributing to suspicion or lack thereof.
Safford v. Department of Fire, 627 So.2d 707 (La.App. 4 Cir.1993); Fraternal Order of Police, Lodge No. 5 v. Tucker, 868 F.2d 74, 78 (3rd Cir.1989); Banks v. Department of Public Safety and Corrections, 598 So.2d 515, 519 (La.App. 1 Cir.1992).
It is reasonable for a governmental employer to order an employee to submit to a non-random drug test on the basis of individualizéd suspicion in certain circumstances. George v. Department of Fire, 93-2421, p. (La.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1102. In both Banks and Tucker, supra; the employer suspicion originated from an unknown informant. Such a source is recognized as unreliable and the degree of corroboration is an important factor. In George, supra, the source of the information came from law enforcement officers. The court ruled that, unlike anonymous informants with questionable reliability, information from *7 law enforcement officers is reliable by nature. Id., 637 So.2d at 1103.
The Civil Service Commission findings take into account the questionable nature of the information supplied by Hamilton, noting that “the tip came from a' drug dealer.” However, the Civil Service Commission findings went on to recognize that in view of the questionable nature of Hamilton’s tip, “the Appointing Authority [NOPD] decided to obtain a search warrant to determine whether Mr. Hamilton’s information could be corroborated.” It was pursuant to this warrant that the cocaine residue was discovered in the police vehicle used by Razor that led to his suspension and eventual dismissal. . This leads to the next and all-important finding by the Civil Service Commission:
Lt. Russell Vappie testified that .he ordered the. drug screen based upon reasonable suspicion because finding the cocaine in the Appellant’s [Razor’s] vehicle did in fact corroborate the tip received from Hamilton.
The Appointing Authority ■ acted prudently. Mr. Hamilton’s information standing alone was not reliable, and could not form the basis for a reasonable suspicion drug test. However, police officers provided additional reliable information that corroborated Mr. Hamilton’s claim.
This Commission finding is supported by Lieutenant Russell Yappie’s testimony before the hearing officer:
As a result of execution of those warrants for the vehicle and for the residence, inside of the police vehicle’s glove compartment, I found what appeared to be white powdered residue in the glove box contained in a clear plastic cellophane envelope.
[1(And as a result of the combination of the allegation that the officer had taken drugs from the scene, the fact that I found this ■ residue in the glove box, which is inconsistent with department policy and procedures about drugs or whatever, I felt comfortable in .asking or ordering Officer Razor to submit to a suspicion test as it relates to the department.
Q. Let me ask. you: What — since you mentioned the policies and procedures, what are the policies and procedures in the transportation of narcotics?
A. The policies and procedures that evidence confiscated from the scene should be brought to the property and evidence room and recorded as either property or evidence. It shouldn’t'be left in the vehicle unattained — unattended or just lying around.
This is consistent with the. testimony given by Sgt. Foy before the.hearing officer when he was asked if narcotics officers should have narcotics wrappers in their cars:
A. They should not.
Q. They should not. Why do you say that?
A. What do you mean by stuff, narcotics?
Q. Wrappers that they may have had . narcotics in it.
A. They should not. I have been a supervisor for the task force that made- numerous narcotics arrests. If narcotics is seized off anybody, it and all of its packaging should be placed on the books. ■ ■ - . '
MR. TERVALON:
If you find narcotics and you can’t arrest somebody for it, you still turn it in and write up a miscellaneous report? ‘ SERGEANT FOY:
Right.
BY MS. PARENT:
*8 |nQ. It should not be, but according to your experience, everybody followed that rule, right?
A. Yes. If they work for me, they follow that rule.
MR. TERVALON:
But we do, Sergeant, from time to time, we do find guns and narcotics in the back seat of cars that should not be there.
SERGEANT FOY:
Based on neglect and should not be there.
But, when it happens, it happens and it is in the rear seat where the perpetrator has usually been seated and been secreted there where it has not been found by the arresting officer. That’s the most common occurrence, not in the glove compartment.
MR. TERVALON:
If you transport somebody, you pull out the seat before and pull it out after?
SERGEANT FOY:
Every time.
MR. TERVALON:
Every single time.
SERGEANT FOY:
Every single time.
Thus, the Commission’s finding that reasonable suspicion existed to justify Razor’s non-random drug testing was not based on the admittedly questionable accusations of Hamilton, but on the fact that those accusations were corroborated by the finding of cocaine residue in his car and Lt. Vappie’s testimony that the finding of the residue was corroborative of Hamilton’s accusations. Therefore, all of Razor’s arguments concerning the unreliable nature of Hamilton’s story become | ^irrelevant once the cocaine residue is discovered and Lt. Vappie testified that it corroborated Hamilton’s story. Likewise, Razor’s attack on the role played by Officer Payne (whom he describes as terminated and discredited) during the time Hamilton was arrested is irrelevant as the actions of Officer Payne of which Razor complains all occurred prior to the issuance of the warrant and the finding of the cocaine residue in Razor’s vehicle. In other words, once the warrant is issued without challenge and the search is conducted without challenge resulting in the discovery of the cocaine residue, everything in the process that Razor complains of that occurred prior to these events becomes irrelevant.
Razor also argues that other police officers had access to his vehicle, so that the discovery of cocaine residue in his vehicle did not necessarily mean that he was the source of that residue. This argument might have merit were the standard for a non-random drug test “beyond a reasonable doubt.” However, the standard is merely “reasonable suspicion.” Reasonable suspicion is a lesser standard than probable cause. State v. Washington, 99-1111 (La.App. 4 Cir. 3/21/01), 788 So.2d 477; State v. Cooper, 37-472 (La.App. 2 Cir. 10/23/02), 830 So.2d 440; State v. Jones, 01-177 (La.App. 5 Cir. 10/17/01), 800 So.2d 958;
Razor notes that Officer Payne had control of Hamilton while Hamilton still had the heroin in his possession, but Officer Payne was never investigated. The fact that there may have been a basis for investigating Officer Payne concerning the missing heroin which was never acted upon, does not imply lack of reasonable suspicion for testing Razor having found cocaine residue in the glove compartment of his car.
Based on the circumstances presented in this case, we cannot say that the hearing officer or the Commission were manifestly erroneous in their findings.
*9 | ^Accordingly, we conclude that the NOPD established the existence of reasonable suspicion to order Razor to submit to a drug test. The findings of the Civil Service Commission establish the efficacy of the drug test, which results Razor does not challenge. Therefore, we find that the decision of the Civil Service Commission to sustain Razor’s termination was not arbitrary, capricious, or an abuse of discretion.
For the foregoing reasons, the judgment of the Civil Service Commission is affirmed.
AFFIRMED