STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1010

JOHN KEITH RICHARD

VERSUS

LAFAYETTE FIRE AND POLICE CIVIL SERVICE BOARD AND
LAFAYETTE CONSOLIDATED GOVERNMENT

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2006-3111
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

**J. DAVID PAINTER**

**********

Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese,
Judges.

REVERSED AND RENDERED.

William L. Goode
812 Johnston St.
Lafayette, LA 70501
Counsel for Plaintiff-Appellant:
        John Keith Richard

M. Candace Hattan
P.O. Drawer 91850
Lafayette, LA 70509
P.O. Box 13438
Counsel for Defendants-Appellees:
        Lafayette Municipal Fire and Police Civil Service Board

Michael P. Corry
P.O. Box 51367
Lafayette, LA 70505
Counsel for Defendant-Appellee:
        Lafayette Consolidated Government

PAINTER, Judge.

This case is before us for a review of the district court's ruling on the appeal of a decision of the Lafayette Fire and Police Civil Service Board (the Board) affirming the termination of John Keith Richard on August 2, 2005.

FACTS

In June 2005, Richard was employed as a Lafayette City Policeman. He also worked as security for Club 410, a bar/nightclub located in downtown Lafayette, Louisiana. Also employed at Club 410 were Jason Galatas, another Lafayette City Policeman, and Jason Segal. Segal allegedly told Galetas that his roommate, Marc Cormier, had a large amount of marijuana in the apartment he shared with Segal on Meaux Avenue in Lafayette and that Galetas and Richard should stay away from the apartment. Galetas called Agent Jason Herpin of the Lafayette Metro Narcotics Squad and reported the information about the marijuana. He allegedly told Herpin that he did not want to be involved, because he had heard rumors that this was where fellow police officer Trampus Gaspard was getting steroids. Herpin passed the information on to Major Brian Baumgardner, Sergeant Gabriel Thompson, and Corporal Kane Marceaux. Those officers, along with a K-9 officer, Corporal Brent Taylor, went to the apartment to secure it while waiting for a search warrant. Cormier was not at home when they arrived. While they were at the apartment, Richard called Taylor saying that a friend had called and said that he had seen plain clothes police officers at the apartment on Meaux Avenue. Richard allegedly asked Taylor what was going on, and Taylor told him he should call Baumgardner. Richard then called Baumgardner who told him that they were conducting a marijuana investigation at the apartment. Cormier returned to the apartment, apparently having been at a nearby

apartment rented by his brother. Richard alleges that he was instrumental in convincing Cormier to return to the apartment.

After obtaining a search warrant, the officers searched Cormier's apartment and found between twenty and twenty-five pounds of marijuana, a number of bottles of steroids, and drug paraphernalia.

In the aftermath of the raid on the Meaux Avenue apartment, an investigation was initiated by the Internal Affairs Division of the Lafayette Police Department (the Department). Richard and Gaspard, among other officers, were subjected to "reasonable suspicion" drug screening. Both tested positive for steroid use, and both were terminated by the Chief of Police Randy Hundley (the Chief). After a hearing on May 23, 2006, the Board affirmed Richard's termination, but overturned Gaspard's termination. Richard appealed to the district court, which affirmed the ruling of the Board. He now appeals that decision to this court. Finding that no reasonable suspicion existed to test Richard, we reverse the ruling of the Board and of the trial court.

DISCUSSION

Appeals of decisions of a civil service board are to be confined to "the determination of whether the decision made by the board was made in good faith for cause." La.R.S. 33:2501(E)(3). The Louisiana Supreme Court in *Moore v. Ware*, 01-3341 (La. 2/25/03), 839 So.2d 940, 945-46, explained that:

> If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review. *Smith v. Municipal Fire & Police Civil Service Bd.*, 94-625 (La.App. 3 Cir. 11/02/94), 649 So.2d 566; *McDonald v. City of Shreveport*, 655 So.2d 588 (La.App. 2 Cir.1995). Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. *Martin v. City of St. Martinville*, 321 So.2d 532 (La.App. 3 Cir.1975), *writ denied*, 325 So.2d 273 (La.1976). Arbitrary

2

or capricious means the lack of a rational basis for the action taken. *Shields v. City of Shreveport*, 579 So.2d 961, 964 (La.1991); *Bicknell v. United States*, 422 F.2d 1055 (5 Cir.1970). The district court should accord deference to a civil service board's factual conclusions and must not overturn them unless they are manifestly erroneous. *Shields v. City of Shreveport*, 565 So.2d 473, 480 (La.App. 2 Cir.), *aff'd*, 579 So.2d 961 (La.1991). Likewise, the intermediate appellate court and our review of a civil service board's findings of fact are limited. *Shields*, 579 So.2d at 964. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. *Id*.; *City of Kenner v. Wool*, 433 So.2d 785, 788 (La.App. 5 Cir.1983).

It is undisputed that on June 15, 2006, the Chief ordered Richard to take a "reasonable suspicion" drug screen. Richard asserts that there was no reasonable suspicion as set out in the Lafayette Consolidated Government Policy and Procedure Manual (PPM) 123–1§ 14. PPM 123–1 states that its purpose is to "eliminate unauthorized drug use (including the unauthorized use of alcohol), drug users, drug activities and drug effects from all work places." To that end, Section 14 of PPM 123–1 provides for non-random drug tests as follows:

14.1 Testing on the basis of reasonable suspicion may be directed for reasons including, but not limited to, those identified below:

a. When a supervisor has reason to suspect that an employee is under the influence of drugs or alcohol due to the employees's physical condition or unusual behavior while working, or other articulable reasons that would lead a prudent supervisor to be concerned about the individual's safety or the safety of co-workers or the general public.

b. When a supervisor has reasonable suspicion of probable drug or alcohol abuse by an employee or a number of employees based on reliable information such as an unusual amount of accidents, incidents of theft, lost productivity or reports of unusual or unsafe behavior, or other facts that would justify testing specific individuals or groups due to safety concerns.

c. When a supervisor has a reasonable suspicion of possible drug or alcohol abuse based on an employee's excessive

3

absenteeism or a suspicious pattern or trend of absenteeism.

d.    When an employee is found in possession of suspected illicit or unauthorized drugs and/or alcohol, drug paraphernalia or when an such items are found in an area controlled or used exclusively or predominately by such employee.

e.    When an employee is arrested or convicted for a drug-related offense, is identified as the focus of a criminal investigation into illegal drug possession, use, or trafficking, or when information of illegal drug activities is provided either by reliable or credible sources or by independent corroboration.

14.2    Although reasonable suspicion does not require absolute proof or certainty, mere speculation or hunches are not sufficient to meet this standard. Therefore, before testing on the basis of reasonable suspicion is scheduled, such suspicion must be discussed with, and supported by the Appointing Authority and/or his designee in coordination with the Substance Abuse Program Manager.

The Board and the Lafayette Parish Consolidated Government assert that Richard's action in involving himself in an unofficial capacity in the drug raid on the Meaux Avenue apartment and his association with the residents of that apartment gave rise to a reasonable suspicion that he was a drug user. While apparently admitting that none of the specific reasons outlined in PPM 123–1 § 14 existed in this case, they point out that these reasons are not exclusive noting that the reasons for "reasonable suspicion" include but are not limited to these reasons. However, the reasons delineated in PPM 123–1 § 14 have in common that they all relate to behavior suggesting drug use or abuse, possession of drugs or related items, or a reliable tip. In this case, none of the reasons for the drug test fall into those categories.

Under both Louisiana and Federal jurisprudence, mandatory drug or alcohol testing of police or certain correctional officers, other than uniformly or systematic random testing,

> "... may be made only on the basis of a reasonable suspicion, based on specific objective facts and reasonable inferences drawn from those facts in light of experience that the employee is then under the influence of drugs or alcohol or that the employee has used a controlled substance within the twenty-four hour period prior to the required test."
>
> *Banks v. Dept. of Public Safety and Corrections*, 598 So.2d 515, 518 (La.App. 1st Cir.1992), *quoting McDonnell v. Hunter*, 809 F.2d 1302, 1309 (8th Cir.1987). (Both *Banks* and *McDonnell* specifically addressed the validity of urinalysis testing.)
>
> The propriety of a urinalysis test not ordered pursuant to a random drug testing program is appropriately evaluated according to whether the Department had reasonable suspicion that a particular officer was a user of illegal drugs. *Banks v. Dept. of Public Safety and Corrections*, *supra* at 519, citing Fraternal Order of Police, Lodge No. 5 v. Tucker, 868 F.2d 74, 77 (3d Cir.1989). This standard requires an "objective evaluation of whether reasonable suspicion existed." *Fraternal Order of Police, Lodge No. 5 v. Tucker*, *supra* at 77, *citing Copeland v. Philadelphia Police Dept.*, 840 F.2d 1139 (3d Cir.1988). "Factors important to such an evaluation include: 1) the nature of the tip or information; 2) the reliability of the informant; 3) the degree of corroboration; and 4) other facts contributing to suspicion or lack thereof." *Fraternal Order of Police, Lodge No. 5 v. Tucker*, *supra* at 78; *Banks v. Dept. of Public Safety and Corrections*, *supra* at 519.

*Safford v. Department of Fire*, 627 So.2d 707, 709 (La.App. 4 Cir. 1993) (footnote omitted).

After reviewing the transcripts of the hearings and statements in this case, we find that there was not sufficient cause to suspect Richard of drug use so as to subject him to "reasonable suspicion" drug screening. Suspicion in this case is based on a phone call to officers participating in a drug raid and acquaintance through another job with suspected drug users. No substantial investigation was conducted before ordering Richard to submit to the test, and there is no suggestion that his behavior suggested drug use. No evidence was introduced suggesting any other incident, action, or pattern of behavior during Richard's tenure as a police officer which suggested that he might be a drug user. The guidelines set out in PPM 123–1 § 14 do

5

not provide for reasonable suspicion sufficient to require drug screening based on guilt by association or on a single instance of bad judgment. We further note that while the more substantial evidence pointed to drug use by Gaspard, i.e., a tip from a fellow officer coupled with a change in Gaspard's appearance suggestive of steroid use, the Board found that reasonable suspicion did not exist with regard to Gaspard. Accordingly we conclude that no showing of reasonable suspicion was made upon which to base the order that Richard submit to the test.

The Board's finding that reasonable suspicion existed was manifestly erroneous. Further, the Board and trial court erred in finding that Richard had been dismissed in good faith for cause. While those in authority may have acted in good faith, they lacked cause for testing and thus for termination. Having so concluded, we reverse and set aside the termination of Richard's employment with the Department. Richard is to be reinstated with all back pay.

## CONCLUSION

For these reasons, we reverse Richard's termination. Judgment is rendered ordering the reinstatement of Richard to his previous position with the Department with all back pay.

REVERSED AND RENDERED.