Dear Mr. Lambert:
Your request for an Attorney General's Opinion was forwarded to me for research and reply. Your question was whether the Work Place Search Policy adopted by the Sewerage and Water Board of New Orleans violated any state or federal laws.
This policy, which was adopted on November 15, 1990, relied principally on the United States Supreme Court's decision in O'Connor v. Ortega, 480 U.S. 709 (1987) (plurality opinion). After a review of this one-page policy, it is our opinion that the policy must be reworked and narrowed in scope if it is to withstand constitutional scrutiny under either federal or state law.
First, under the Fourth Amendment, this policy, as it is now written, violates an employee's right to privacy. In O'Connor, the Supreme Court held that a public employer's search of the work place is constitutional under the Fourth Amendment if it is based upon reasonable grounds to believe that the search will turn up evidence of work-related misconduct by an employee, or that the search is necessary for a non-investigative, work-related purposes, such as retrieving a needed file or taking inventory of state property. The High Court agreed that employees have a legitimate expectation of privacy in personal items left at the work place.
Therefore, a search is constitutional only if the search is justified at its inception and only if the search was actually conducted in a means that is reasonably related in scope to the circumstances which justified the initial intrusion of the employee's right of privacy in the first place.
In determining whether a search is reasonable, the Court in O'Connor balanced in the interests of the employer in ensuring that the agency is operating effectively and efficiently and in protecting the agency and the general public from the consequences of the employee's possible misconduct against the employee's privacy interest in the work place. A search would be permissible in scope if it is conducted according to objective standards reasonably related to the objectives of the search, and those standards are not excessively intrusive in light of the nature of the alleged misconduct. The bottom line of the O'Connor opinion was that whether a particular search is reasonable is decided upon a case-by-case basis.
Therefore, under the board's current policy, suspicionless random searches are allowed for all employees without any constraints as to the types of jobs actually being performed by those employees. In addition, the policy states that such searches will be conducted for stated reasons, but then adds that those searches are "including but not limited to" those stated reasons. The policy also includes the employee's personal vehicle while it is parked on the board's property. Moreover, the employee who refuses to cooperate with any search is subjected to disciplinary action.
The O'Connor opinion cannot fairly be read to approve of suspicionless random searches of all employees regardless of their job descriptions. Moreover, the Supreme Court's most recent cases in the area of drug testing imply that the employee's job dictates the outcome of whether or not a random drug test based upon reasonable suspicion would meet the constraints of the Fourth Amendment. See Skinner v. Railway Labor Executives' Association, 489 U.S. 602 (1989) and National Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989). These decisions, while not directly on point, provide some guidance in that while both cases abandoned the need for a particularized individual suspicion of illegal drug use, they were premised on a substantial, generalized suspicion inherent in the nature of the job or the fact that an accident or fatality had occurred.
Second, as this policy relates to Louisiana Constitution, generally speaking, the privacy protection given to Louisiana citizens under Article I, § 5 of the Louisiana Constitution (1974) is more pervasive than that given under the Fourth Amendment. [See State v. Church, 538 So.2d 993 (La. 1989), State v. Parms, 523 So.2d 1293 (La. 1988), State v. Hernandez,410 So.2d 1381 (La. 1982).] Therefore, for the reasons stated above, the board's work place search policy is overly broad and vague, and could not withstand a constitutional challenge under Art. 1, § 5.
Purely random, suspicionless searches for any purposes are prohibited in Louisiana. The controlling case on this issue in Louisiana is State v. Barry, 543 So.2d 1364 (La.Ct.App. 3d Cir. 1989), writ denied, 548 So.2d 1236 (La. 1989). In this case, the Third Circuit echoed the language of O'Connor and held:
 Public employers' intrusions on constitutionally protected privacy interest of government employees for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct should be judged by a standard of reasonableness under all circumstances. This standard is met when the search is justified at its inception and when the search is reasonably related in scope to the circumstances which justified the interference in the first place.
Clearly the board's policy of random searches is overly broad in light of Barry. Thus, it is in violation of state constitutional law. The board's policy must be limited to circumstances in which there is a "reasonable suspicion" or when the "search is justified at its inception and when the search is reasonably related in scope to circumstances which justified interference originally." Id. at 1364.
In conclusion, it is the opinion of this office that the board's work place search policy, as it is currently written, is unconstitutional under either federal or state constitutional law.
I hope this opinion has answered your questions sufficiently. If this office can be of any further service to you, please do not hesitate to contact me.
Sincerely,
 KATHLEEN E. PETERSEN Assistant Attorney General
KEP:ckj