jiCANNELLA, Judge.
Defendant, Alvin Thomas, appeals from his conviction of illegal possession of a firearm by a convicted felon, a violation of La.R.S. M^S.l.[1] We affirm.
Defendant was charged with the offense on June 22, 1993. He pled not guilty to the charge at his arraignment on July 19, 1993.
*442 Immediately prior to trial on October 13, 1993, the trial court heard and denied defendant’s motion to suppress evidence. Defendant then withdrew his earlier not guilty plea and tendered a plea of guilty as charged, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976) to appeal the trial court’s denial of his suppression motion. Following a Boykin colloquy, the trial court accepted defendant’s Crosby plea. The trial court sentenced defendant to serve five years at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served.
RThe sole witness to testify at the hearing on the motion to suppress evidence was the arresting officer, Deputy Richard Bradshaw of the Kenner Police Department, patrol Division. He testified that, while on duty during the early morning hours of June 10,1993, he was dispatched by his headquarters to investigate an anonymous report of three suspicious males loitering on the corner of 27th Street and Dawson Street in Kenner.[2] Deputy Bradshaw stated that the vicinity of 27th and Dawson Streets was known as an area of heavy drug trafficking and that he was personally aware of narcotics and weapons arrests previously made in that area. When he arrived at the location, “after midnight”, Deputy Bradshaw observed three males loitering on the corner of 27th and Dawson Streets. Deputy Bradshaw testified that he got out of his car and approached the three suspects. He said that two of the men had both hands in their pockets and one had his hands behind his back. The deputy stated that he asked to see their hands in order to insure that they had no weapons. The deputy then asked one subject whether he had weapons on his person. After receiving a negative reply, the deputy frisked the man for weapons. During this time, defendant was “looking around and wouldn’t approach me directly. He began backing away from me as I approached him.”
Deputy Bradshaw testified that defendant’s hands were in front of him at first, but he then placed them behind his back. The deputy stated that the movement alarmed him and, when he attempted to approach defendant for a “pat down” for weapons, defendant ran. The deputy pursued defendant, never losing sight of him, and half-way down the 2600 block of Dawson Street, defendant dropped a handgun on the ground.
The deputy continued to chase defendant but eventually lost him. After retrieving the pistol, Deputy Bradshaw radioed for assistance from other officers who l.ssealed the backyards of residences and subsequently found and arrested defendant in the backyard of one of those residences. The gun was found to be a Colt, government model, 45 caliber, semi-automatic pistol.
During cross-examination, defense counsel questioned Deputy Bradshaw about apparent discrepancies between his testimony on direct examination and the information contained in the deputy’s arrest report. However, that report was not introduced into evidence at the suppression hearing. Deputy Bradshaw stated that he knew defendant from “previous dealings”, but did not elaborate on the nature or substance of those dealings. He confirmed that his arrest report did not indicate that any of the three men on the corner was engaged in criminal activity aside from what the officer perceived to be loitering. Deputy Bradshaw also testified on cross-examination that, out of concern for his own safety, he did not intend to question defendant before a pat-down search for weapons. After demonstrating the manner in which defendant placed his hands behind his back at the time of the incident, Deputy Bradshaw stated that defendant’s actions indicated to him that defendant may have been armed, particularly since the area was a high crime area. However, the officer agreed that his arrest report did not state any grounds for believing that the three subjects were armed.
On redirect examination, Deputy Bradshaw reiterated the substance of his previous *443 testimony. The deputy was by himself at about 2:00 a.m.[3] When he got out of his police car at the site, he had no intention of arresting any of the three subjects. Rather, he intended to question the three men about what they were doing. However, for his own safety, Deputy Bradshaw asked the three men to keep their hands exposed to his view, but defendant kept putting his hand behind his back. Because Deputy Bradshaw felt that defendant might be armed, he attempted to frisk defendant.
After hearing the testimony and arguments of counsel, the trial judge denied defendant’s motion to suppress evidence.
|40n appeal, defendant contends that the seizure was illegal because the police officer did not have reasonable suspicion to stop him. He also requests our review of the record for patent error.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. An individual is not “seized” within the meaning of the Fourth Amendment until that individual either submits to a police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed 2d 690 (1991).
The Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment to the United States Constitution, because Article 1, Section 5 of the Louisiana Constitution also protects against “invasion of privacy.” State v. Church, 538 So.2d 993, 996 (La.1989). Thus, the Louisiana Supreme Court has held that an individual is “seized” within the meaning of Article 1, Section 5 when the individual is either “actually stopped” or when an “actual stop” of the individual is “imminent.” State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert, denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In State v. Tucker, 626 So.2d 707 (La.1993), the Louisiana Supreme Court established the parameters of an “actual stop” and an “imminent actual stop”. The court adopted the Hodari D. definition of an actual stop, holding that “an individual has not been actually stopped unless he submits to a police show of authority, or he is physically contacted by the police.” Tucker at 712. It further explained:
“In determining whether an ‘actual stop’ of an individual is ‘imminent,’ we find that the focus must be on the degree of certainty that the individual will be ‘actually stopped’ as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an ‘actual stop’ of the individual is ‘imminent.’ Although ' ifinon-exhaustive, the following facts may be useful in assessing the extent of police force employed and determine whether that force was virtually certain to result in an ‘actual stop’ of the individual; (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter;
(5) the location and characteristics of the area where the encounter takes place; and
(6) the number of police officers involved in the encounter.” (footnotes omitted; emphasis in original).
Id. at 712-713.
The issue was recently addressed by this court in State v. Hamilton, 630 So.2d 315 (La.App. 5th Cir.1993). There, two deputies were patrolling an area well known for heavy drug trafficking. The deputies were in an unmarked police car equipped with dashboard flashers and a siren. At a time close to midnight, the deputies observed defendant standing on a sidewalk in front of an area where no businesses were open. Defendant began acting nervously when he noticed the *444 slowly approaching vehicle, which was not flashing its lights or sounding its siren. The deputies observed defendant drop a matchbox from his right hand, and they immediately stopped their vehicle about 5 to 10 feet from defendant. After exiting the vehicle, the deputies ordered defendant to come over to the patrol car. However, defendant fled into a nearby residential area where he was later caught and arrested. The matchbox dropped by defendant was retrieved and was discovered to contain crack cocaine.
In his motion to suppress the evidence, the defendant in Hamilton alleged that he had abandoned the cocaine in response to an unlawful detention. He claimed that the deputies lacked reasonable suspicion to justify an investigatory stop.
This court concluded that defendant, at the time he dropped the matchbox containing cocaine, had not been “actually stopped” nor was an “actual stop imminent”. The court found that defendant abandoned the cocaine after observing a slowly approaching police vehicle which was neither flashing its lights nor sounding | Rits siren. Since a “seizure” of defendant had not taken place at the time of the abandonment, this court held that the deputies lawfully seized the cocaine, which was abandoned before any unlawful intrusion. Id. at 317.
Unlike Hamilton, the abandonment in the present case occurred after the defendant had fled from the site of the initial encounter with the police officer. However, under Tucker, in determining whether an individual has been “seized” the focus is on the initial encounter with the police and not on the abandonment. If an “actual stop” or an “imminent actual stop” of the individual occurs during that initial encounter, then the individual has been “seized” and reasonable cause is required to justify the intrusion into the individual’s right to freedom from governmental interference. See: C.Cr.P. 215.1.
After reviewing the testimony from the suppression hearing in this case, we find that defendant was not “seized” during his initial encounter with Deputy Bradshaw because there was neither an actual stop nor was an actual stop imminent. After patting down one of the three men on the corner, Deputy Bradshaw approached defendant, who backed away and fled. He was free at this time to leave the scene. See: Tucker at 710. Thus, defendant was not actually stopped, because he neither submitted to a show of authority by Deputy Bradshaw nor was he physically contacted by the officer. Defendant’s failure to submit to a show of authority is further evidenced by his disregard of Deputy Bradshaw’s instruction for each of the three men to keep their hands in front of them.
Also, an actual stop was not imminent. The officer did not come upon defendant with such force that, regardless of defendant’s attempts to flee or elude the encounter, an actual stop of defendant was virtually certain. He was alone, investigating a report late at night in an area known for heavy drug trafficking. The deputy did not approach defendant and the other two men with his weapon drawn, and he remained the sole officer involved in the incident until backup officers were called to assist in locating defendant after he had fled and had abandoned the gun. The force 17employed by Deputy Bradshaw in attempting this stop was minimal. Therefore, we find that the initial encounter with defendant did not constitute a stop or seizure of defendant under State v. Tucker and State v. Hamilton, requiring reasonable cause to justify the police officer’s actions.
In addition, defendant abandoned the .45 caliber pistol prior to any unlawful intrusion into his right to freedom from governmental interference. Therefore, Deputy Bradshaw legally seized the weapon. Belton at 1199 and Hamilton at 317. Consequently, the trial court correctly denied defendant’s motion to suppress the evidence.
The record was reviewed for errors patent in accordance with State v. Williams, 593 So.2d 753 (La.App. 5th Cir.1992) and L.C.Cr.P. art. 920. Additionally, since defendant entered a guilty plea in this case, the issue of whether defendant was properly “Boykinized” was also included in the error patent review. State v. Godejohn, 425 So.2d 750 (La.1983). We have reviewed the record and find no errors patent.
*445 Accordingly, the conviction and sentence of defendant is hereby affirmed.

AFFIRMED.

. Defendant had a previous felony conviction under LSA-R.S. 40:967 C for possession of cocaine. LSA-R.S. 14:95.1 A makes it unlawful for any person convicted of a felony violation of the Uniform Controlled Dangerous Substances Law, LSA-R.S. 40:961 et seq., to possess a firearm or carry a concealed weapon.

. The transcript of the suppression hearing contains a discrepancy regarding Deputy Bradshaw’s actual arrival time. After the deputy testified that he arrived at the location “after midnight”, the transcript reflects that the prosecutor asked, “Would 7:00 a.m. be correct?", and Deputy Bradshaw responded, “yes”. However, the transcript later reveals the time to have been around 2:00 a.m.

. See footnote 2, supra.