792 So.2d 24 (2001)
Walter Eugene GARRETT, Plaintiff-Appellant,
v.
CITY OF BOSSIER CITY, Defendant-Appellee.
No. 34,784-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
David R. Cook, Counsel for Appellant.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, Counsel for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
*25 BROWN, Judge,
On October 23, 1998, Walter Garrett, was stopped by Bossier City Police Officer Christopher Estess for a seat belt violation and then arrested, handcuffed and brought to jail for not having a driver's license in his possession. On November 13, 1998, Garrett filed this civil suit against the City of Bossier City and Officer Estess. After hearing the evidence, the trial court found that the officer acted on a directive from the city court judge which was in error, that is, contrary to statutory law. The trial court concluded that neither Officer Estess nor the city could be faulted for following an "order" issued by a judge. On August 17, 2000, a judgment was signed dismissing Garrett's lawsuit. Garrett has appealed.

Facts
Around 4:30 a.m. on October 23, 1998, Walter Garrett was observed by Officer Estess driving south on Hamilton Road in Bossier City. Garrett, who had been home asleep, was going to pick up his wife who was getting off work at Casino Magic. The officer noticed that Garrett was not wearing a seatbelt and signaled him to stop. Garrett pulled into the parking lot of Casino Magic and stopped. Garrett's wife stood watching and waiting approximately 200 yards from where he had pulled over. Officer Estess advised the dispatcher of the stop and the vehicle license number, then asked Garrett to get out of his car and to produce his driver's license. Garrett identified himself but stated that his wallet, which contained his license, was at home on his TV.
Officer Estess verified by radio that a valid license, one not under revocation, suspension or cancellation, had been issued to a Walter Garrett and that there were no outstanding arrest warrants. Because he had no other photographic identification, Garrett was then advised of his Miranda rights by Officer Estess, handcuffed and placed in the back of the patrol car. At Garrett's request, the officer gave the car keys to Garrett's wife as she waited at the Casino Magic building. Officer Estess made no effort to speak with the lady Garrett identified as his wife. Instead, he brought Garrett to the police station. Thereafter, Garrett's wife drove home, picked up his wallet, then drove to the police station with her husband's license. Garrett was at that time released.
At trial, Officer Estess admitted that he did not request the dispatcher for information contained on the license, such as height, weight, eye color, social security number and home address. Officer Estess testified that even if this information matched the driver, it was irrelevant as Garrett (or any other individual) would be taken to jail if he could not produce a picture identification. He further testified at trial that he also did not examine the vehicle registration to determine if the car belonged to Garrett or to someone else. Without knowing whether Garrett owned the car, the officer nevertheless tendered the car to Mrs. Garrett, whom he did not know. Officer Estess characterized his action in turning the car over to a stranger as "cutting them a break," then admitted that "I made a mistake."
Officer Estess claimed that he was operating under a "directive" placed in his box at the station house. Over the hearsay objections of plaintiff, a document purporting to be a copy of a memorandum from Bossier City Judge Mike Daniel to Deputy Chief Teutsch and Major Piazza was introduced as evidence at trial. The document stated:
TO: DEPUTY CHIEF TEUTSCH, MAJOR PIAZZA
FROM: JUDGE MICHAEL E. DANIEL
DATE: OCTOBER 29, 1997

*26 It has been brought to my attention that traffic tickets are being issued to defendants who are unable to produce a driver's license without the officers processing them through the jail.
It is my recommendation that those individuals always be processed at the jail so that a picture of the individual is available when questions arise as to the true identity of the defendant.
I had previously sent this memo to the jail, but felt that you should be informed of this recommendation, also.

Discussion
Plaintiff does not complain about Officer Estess's initial stop of Garrett pursuant to La. R.S. 32:295.1 for failure to wear a seatbelt, but instead takes issue with the subsequent custodial arrest. The incident occurred prior to State v. Barbier, 98-2923 (La.09/08/99), 743 So.2d 1236, wherein the supreme court interpreted the seatbelt statute to mean that police officers may not stop a motorist solely for failure to wear a seatbelt. Plaintiff complains that it was unlawful for him to be taken into police custody for this offense as well as for driving without possession of his driver's license. La. R.S. 32:295.1(F) does not permit a person to be arrested for failure to wear a seatbelt:
(F) No vehicle, the contents of the vehicle, driver, or passenger in a vehicle shall be inspected, detained, or searched solely because of a violation of this Section. (Emphasis added.)
The record clearly indicates, however, that Officer Estess did not arrest Garrett for the seatbelt violation, but solely because he was not in possession of his driver's license and had no other photographic identification.
The central inquiry then, is not whether Officer Estess lawfully stopped Garrett, but whether Garrett's rights as a citizen were violated when he was subjected to a custodial arrest (in lieu of issuance of a summons) because he did not have in his possession his driver's license.
We note the recent U.S. Supreme Court decision in Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), wherein the Court (in a 5-4 decision) ruled that the "statutorily authorized" arrest of a Texas woman for failure to wear her seatbelt did not violate her Fourth Amendment right to be free from unreasonable seizure. The instant case is distinguishable. Texas statutes allowed such a custodial arrest; however, Louisiana statutes require the officer to only issue a summons if the officer determines that the party driving without his or her license has been issued a license that is neither under suspension, revocation, nor cancellation. Under Louisiana law, the officer "shall" make a real effort to confirm the driver's identity.
La. R.S. 32:411.1 provides, in part:
C. (1) When an officer or agent of the department or any police officer of the state, or any parish or municipality has reasonable grounds to believe a person has committed an offense of driving without a valid driver's license in his possession, the police officer shall make every practical attempt based on identifying information provided by the person to confirm that the person has been issued a valid driver's license. If the police officer determines that the person has been issued a valid driver's license which is neither under revocation, suspension, or cancellation, but that the license is not in his possession, the peace officer shall issue a written summons to the offender in accordance with law, commanding him to appear and answer the charge.

*27 (2) The provisions of this Subsection shall in no way limit the peace officer from issuing a citation for operating a motor vehicle without physical possession of a valid driver's license.
Likewise, La.C.Cr.P. art. 211.4 contains the identical provision as follows:
A. When a peace officer has reasonable grounds to believe a person has committed an offense of driving without a valid driver's license in his possession, the police officer shall make every practical attempt based on identifying information provided by the person to confirm that the person has been issued a valid driver's license. If the police officer determines that the person has been issued a valid driver's license which is neither under revocation, suspension, or cancellation, but that the license is not in his possession, the peace officer shall issue a written summons to the offender in accordance with law, commanding him to appear and answer the charge. (Emphasis added).
B. The provisions of this Article shall in no way limit the peace officer from issuing a citation for operating a motor vehicle without physical possession of a valid driver's license.
Officer Estess stopped Garrett for a seatbelt violation and requested his driver's license. Once he discovered that Garrett did not have a driver's license in his possession, the procedure the officer was directed to follow by La. R.S. 32:411.1(C)(1) and La.C.Cr.P. art. 211.4(A) was to make every practical attempt to confirm that Garrett had been issued a valid driver's license that was not under revocation, suspension or cancellation. Indeed, Officer Estess confirmed by radio dispatch that a Walter Garrett had been issued a Louisiana Driver's License that was not under revocation, suspension or cancellation and that there were no outstanding warrants on him.
The issue presented in this case is whether Officer Estess made "every practical attempt" to determine the identity of the person standing before him. This question is easily answered. Officer Estess admitted that he made no effort to confirm through radio dispatch that Garrett was the person he said he was by matching him to the physical description contained in the driver's license. Further, the driver's license includes the licensee's date of birth, home address and social security number, information that Officer Estess could have first obtained verbally from Garrett then matched to the driver's license.
Officer Estess did not articulate a single reason to believe that Garrett might be giving him a false name. There is nothing in the record that would indicate that Garrett was abusive or uncooperative.[1] Officer Estess obviously did not think that Garrett was driving a stolen vehicle because he did not check (although he could have done so) the vehicle registration to verify ownership, nor did he question Mrs. Garrett when he gave her the car keys. He made no effort to confirm that she was in fact Garrett's wife.
Bossier City submits that the officer's actions were justified because of a "directive" from Judge Mike Daniel. The memorandum contains a recommendation to Deputy Chief Teutsch to "always" jail all persons who are unable to produce a *28 driver's license. By placing this memorandum in the officers' boxes, the ranking department heads were de facto initiating a policy, one clearly prohibited by statutory law. There was no evidence that the city checked the law to determine if Judge Daniel's recommendation was valid before distributing it to its officers.
The trial court correctly concluded that Officer Estess could not be held accountable for following a departmental "directive" and therefore, could not be held at "fault." The same cannot be said of the city. Bossier City was obligated to check out the recommendation before accepting it as departmental procedure. The city made no such check but simply distributed the directive to its officers.
Officer Estess carried out a de facto departmental policy that included the custodial arrest of a citizen whose "crime" was that he left his wallet containing his driver's license at home and who had no other photographic identification in his possession. The de facto policy did not allow the officer to make every "practicable attempt" to identify that the person had been issued a valid driver's license or to exercise his discretion to issue only a summons even if all such practical efforts were in vain.
We hold, therefore, that the custodial arrest of Garrett was, under La. R.S. 32:411.1(C) and La.C.Cr.P. art. 211.4(A), statutorily prohibited. Officer Estess did afford Garrett an advantage by allowing his wife to drive his car home. Further, Garrett was released when his wife came to the police station and produced his license. These actions certainly mitigated any damages suffered by Garrett. Although these violations are not constitutionally proscribed, nevertheless, we believe that the following supreme court statement equally applies to violations of statutorily imposed restrictions:
"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviation from legal modes of procedure.... It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." State v. Church, 538 So.2d 993, 997, (La.1989), citing Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746, 752 (1886).
Accordingly, we reverse the judgment of the trial court in part and render judgment for plaintiff against the City of Bossier City. Walter Garrett incurred no special damages. He was detained only a short time. We therefore award him general damages in the amount of $1,500. Costs, on appeal and at the trial of this matter, are assessed to the city to the extent provided by law. We affirm the judgment in favor of defendant, Christopher Estess.

Conclusion
For the reasons set forth above, the judgment of the trial court is reversed in part. We hereby render judgment in favor of plaintiff, Walter Garrett, in the amount of $1,500, together with legal interest from the date of judicial demand against the City of Bossier City. In all other respects the judgment of the trial court is affirmed. REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[1] This court held that a full custody arrest was proper rather than the issuance of a summons to a defendant for having an invalid inspection sticker in a situation in which the defendant became abusive and uncooperative. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La. 1993).