| | | |
|---|---|---|
| **MYTRELL CARTER** | * | **NO. 2024-CA-0467** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **SEWERAGE & WATER BOARD OF NEW ORLEANS** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9519
Hearing Examiner Imtiaz A. Siddiqui
\* \* \* \* \* \*
**Judge Karen K. Herman**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Karen K. Herman)

Kevin R. Mason-Smith
ROBEIN URANN SPENCER PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLEE

Darryl Harrison
Deputy Special Counsel
Chanelle L. Collins
Assistant Special Counsel
SEWERAGE & WATER BOARD
625 St. Joseph Street
Room 201
New Orleans, LA 70165

      COUNSEL FOR DEFENDANT/APPELLANT

                  AFFIRMED
                  JANUARY 15, 2025

KKH
DLD
DNA

This is an appeal from the Civil Service Commission for the City of New Orleans ("CSC"). The Sewerage and Water Board of New Orleans ("Board") seeks review of the May 16, 2024 decision of the CSC, which reinstated Board employee, Mytrell Carter ("Ms. Carter"), with back pay and all other emoluments of employment. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Carter was hired by the Board on January 10, 2022, as a full-time employee in the position of Office Worker within the Human Resources Personnel Department. Ms. Carter was classified as a permanent employee in the civil service system.

In 2023, Ms. Carter requested leave under the Family and Medical Leave Act ("FMLA") in connection with her pregnancy. Because Ms. Carter previously used one week of leave to care for a family member, her entitled twelve weeks of paid FMLA leave was reduced to eleven weeks.

1

On May 26, 2023, Ms. Carter's treating physician, Dr. Amy Grace, completed a Certification of Health Care Provider, listing Ms. Carter's return-to-work date as October 23, 2023. Ms. Carter's parental leave began on July 4, 2023, and the eleven weeks were exhausted on September 19, 2023.

As discussed in more detail below, Ms. Carter returned to work on October 25, 2023, at which time, she was terminated. Ms. Carter was provided with a disciplinary letter, indicating that she was terminated effective October 24, 2023, for failing to return to work, or voluntarily resigning. The letter further references the following:

SWBNO's Attendance Policy

> An employee who fails to report to work as scheduled for three (3) consecutive working days without notice or without approval may be considered to have voluntarily resigned from his or her position due to job abandonment. Since job abandonment is considered a voluntary resignation, it is not a disciplinary action and therefore not subject to a Pre-Termination Hearing.

CS Rule IX, Section 1 - Disciplinary Actions, Maintaining the Standards of Service

> Sec 1.1 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:

> (a) Termination from the service.

Ms. Carter appealed her termination to the CSC.

### *December 14, 2023 CSC Hearing*

A Hearing Examiner appointed by the CSC reviewed exhibits presented by the parties and heard testimony from Ms. Carter and Board employees, Robin Muse (Benefits Department), Miera Moore (H.R. Department), Juli Sholar (Ms. Carter's supervisor), Kimberly Batiste (Employee Relations Manager) and Ceane Pichon (Payroll Department).

In her testimony before the CSC, Ms. Carter acknowledged that her eleven weeks of paid leave terminated on September 19, 2023, understanding that thereafter, she would remain on unpaid leave until the October 23, 2023 return date set by Dr. Grace. Ms. Pichon confirmed that once an employee's FMLA leave expires, the employee goes on leave without pay.

Ms. Carter testified that she presented at the Board offices on September 28, 2023, to inquire about her return date and her schedule. Ms. Carter requested a modified schedule to accommodate her child care needs. She also requested leave on October 23 and 24, which was denied. During the visit, Ms. Carter personally informed Ms. Moore that she was not medically cleared to return. Ms. Moore instructed Ms. Carter to contact Ms. Muse in the Benefits Department regarding the required documents needed for her return.

On October 6, 2023, Ms. Carter informed Ms. Moore and Ms. Sholar via email that she was not medically cleared to return to work. On October 13, 2023, Ms. Muse emailed Ms. Carter stating that the Benefits Department had not

received any documents from her medical provider.  Ms. Carter responded on October 16, 2023, stating:

> Per our last conversation as [sic] relates to additional documents requested, my original documents that were already provided states that I am due to return on October 24, my Dr. wants to know is there an additional form that needs to be filled out or what exactly are you guys requesting please advise so that I can get this returned to you all as soon as possible.

Ms. Carter testified that Ms. Muse never replied.  She further testified that if the Board had identified the necessary form to be completed, she would have provided the additional information.  Ms. Muse testified that she was sure she responded to Ms. Carter's email.  However, the Board could not produce any such response.

Ms. Muse testified that once Ms. Carter's FMLA leave was exhausted, the Board required a doctor's note for additional leave and an authorization for her return to work.  She stated that she sent Ms. Carter the required FMLA form.  Ms. Carter testified that she did not receive the form.  She also objected to the introduction of the form presented at the hearing by the Board on the basis that the document contained another employee's name and was unsigned.  The objection was sustained, and the document was not admitted into evidence.

Ms. Carter reported for work on October 25, 2023.  She testified that she brought with her a note from Dr. Grace, clearing her to return to work on October 25, 2023.  Ms. Carter was terminated before she could present the document.  Dr. Grace's note was not admitted into evidence.

4

Finally, Ms. Carter testified that she suffered from post-partum depression, for which she was receiving treatment during her parental leave. She did not notify her supervisors of the condition, considering it to be a personal matter.

The Hearing Examiner issued a report on March 24, 2024, recommending that the CSC grant Ms. Carter's appeal. Specifically, the Hearing Examiner determined that the facts did not support a finding that Ms. Carter voluntarily resigned.

***March 24, 2024 CSC Decision***

After considering the record and the recommendation of the Hearing Examiner, the CSC granted Ms. Carter's appeal and ruled as follows:

> The Sewerage & Water Board has failed to show cause for the termination of Ms. Carter's employment. First, the Sewerage & Water Board has failed to show that Ms. Carter abandoned her job. Contrary to the testimony of the Human Resources Director (Tr. at 139), the Department of Labor requires the employer to provide written notice to the employee of the dates of approved FMLA leave. 29 CFR § 825.300. If the Sewerage & Water Board had provided this notice, then Ms. Carter would have understood the dates of her approved FMLA leave and the requirements to return to work. Second, the Sewerage & Water Board's refusal to accept Dr. Grace's medical opinion that Ms. Carter's condition required leave until October 23, 2023, because that opinion was part of a FMLA certification is unreasonable, especially when Dr. Grace was responsive to the Sewerage & Water Board's earlier direct request that Dr. Grace complete the "correct" FMLA form. (Tr. at 97-98). The Sewerage & Water Board has also failed to show that it informed Ms. Carter of the additional documentation it needed from Dr. Grace, even after Ms. Carter asked on October 16, 2023, what form her doctor needed to complete. Ms. Muse's testimony that she responded to the October 16 email is unavailing. Even if the Sewerage & Water Board rejected Ms. Carter's explanation for her failure to report to work on October 23 and 24, the penalty for a second offense of unexcused absence is a letter of reprimand under the Sewerage & Water Board's Attendance Policy. (Ex. SWBNO-2 at 5).

> The Commission grants Ms. Carter's appeal on the basis that the Sewerage & Water Board failed to provide her with notice and an

opportunity to be heard under Civil Service Rule IX and the due process clauses of U.S. and Louisiana Constitutions. The Commission also grants Ms. Carter's appeal on the basis that the Sewerage & Water Board has failed to show that she voluntarily abandoned her job. The Sewerage & Water Board shall reinstate Ms. Carter and reimburse her all lost wages and other emoluments of employment from October 24, 2023, to the date of her reinstatement.

The Commission further concluded that a pre-termination hearing may have given Ms. Carter an opportunity to explain the medical condition that prevented her from returning to work and her failure to provide the additional documents as requested by the Board.

The Board's appeal to this Court followed.

## DISCUSSION

### *Assignments of Error*

On appeal, the Board asserts that the CSC erred in reinstating Ms. Carter to her employment on the grounds that the Board failed to: 1) show cause for the termination of Ms. Carter; 2) provide Ms. Carter with notice and opportunity to be heard under Civil Service Rule IX and the due process clauses of the U.S. and Louisiana Constitutions; and 3) show that Ms. Carter voluntarily abandoned her job.

The Board argues that Ms. Carter failed to provide the necessary documentation to extend her leave and failed to communicate her actual return date with her supervisors. Thus, it was determined that (in missing more than three days in violation of the Board's Attendance Policy) Ms. Carter voluntarily resigned her position. Moreover, the Board maintains that because voluntary

6

resignation is not a disciplinary action under the Civil Service Rules, a pre-termination hearing would not apply.

***Governing Legal Principles and Standard of Review***

"An employee with permanent status in the classified city service may only be terminated, or otherwise subjected to disciplinary action, in writing and for good cause." *Stephens v. New Orleans Police Dep't*, 2019-0641, p. 6 (La. App. 4 Cir. 12/4/19), 286 So.3d 519, 523 (citation omitted). "Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged." *Cittadino v. Dep't of Police*, 558 So.2d 1311, 1315 (La. App. 4th Cir. 1990) (citation omitted). "[T]he appointing authority must prove, by a preponderance of the evidence, the occurrence of the complained of activity and that the conduct did in fact impair the efficient and orderly operation of the public service." *Dukes v. New Orleans Police Dep't*, 2022-0746, p. 6 (La. App. 4 Cir. 5/10/23), 368 So.3d 159, 164 (citations omitted).

This Court recently reiterated the standard of review in CSC cases as follows:

> The decision of the CSC "is subject to review on any question of law or fact upon appeal to this Court." *Cure v. Dep't of Police*, 07-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (citing La. Const. art. X, § 12(B)). The appellate standard of review in civil service cases is as follows: (1) the appellate review of factual findings is governed by the manifest error or clearly erroneous standard; (2) if the CSC's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard; rather, the appellate court exercises its constitutional duty to review questions of law and render a judgment on the record; (3) a legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial; and (4) mixed questions of fact and law are accorded "great

7

deference" under the manifest error standard of review. *Banks v. New Orleans Police Dep't,* 01-0859, p. 3 (La. App. 4 Cir. 9/25/02), 829 So.2d 511, 513-14 (citations omitted). Accordingly, the CSC's conclusion as to the existence or absence of cause for dismissal will only be reversed when its decision is arbitrary, capricious or an abuse of the CSC's discretion. *Razor v. New Orleans Dep't of Police*, 04-2002, p. 4 (La. App. 4 Cir. 2/15/06), 926 So.2d 1, 4; *Woods v. French Mkt. Corp.*, 21-0689, p. 6 (La. App. 4 Cir. 3/23/22), 336 So.3d 912, 916, writ not considered, 22-01048 (La. 10/12/22), 348 So.3d 68.

*Crayton v. Sewerage & Water Bd. of New Orleans*, 2023-0728, pp. 4-5 (La. App. 4 Cir. 7/9/24), --- So.3d ---. 2024 WL 3338350.

With these precepts in mind, we consider whether the CSC erred in granting Ms. Carter's appeal and reinstating her employment.

As stated above, the CSC concluded that Ms. Carter did not voluntarily resign, she was terminated. As such, she was not provided with an opportunity to be heard in advance of her termination under the due process clauses of the federal and state constitutions. Based on our review, we find this conclusion to be supported by the evidence.

The Board maintains that Ms. Carter never affirmatively communicated her anticipated return to work or the duration of any additional leave request. Thus, Ms. Carter was deemed to have voluntarily resigned, negating the need for a pre-termination hearing. We find no merit in this argument.

The FMLA form presented by Dr. Grace on May 26, 2023, listed a return date of October 23, 2023. Ms. Carter testified that she assumed the document was sufficient. She also testified that she did not receive a response from Ms. Muse to clarify what additional documentation was needed. The Board was unable to present evidence that Ms. Muse responded to Ms. Carter's inquiry. It is also clear

from the record that throughout her parental leave, Ms. Carter remained in communication with her supervisors.

In sum, the record does not support a finding that Ms. Carter voluntarily resigned. Thus, as the CSC correctly concluded, Ms. Carter was entitled to notice and an opportunity to be heard in advance of her termination.

In *Ebbs v New Orleans Fire Dep't.*, 2022-0185, pp. 6-7 (La. App. 4 Cir. 12/28/22), 355 So.3d 1115, 1120, this Court discussed the civil service employees' due process right to notice and a pre-termination hearing. Quoting *Regis v. Dep't of Police*, 2016-0821, pp. 16-17 (La. App. 4 Cir. 5/24/17), 221 So.3d 165, 175, we stated:

> Louisiana Constitution Article 10, § 8, provides in part that: "No person who has gained permanent status in classified state or city service shall be subject to disciplinary action except for cause expressed in writing." Rule IX, § 1.2 of the Rules of the Civil Service Commission for the City of New Orleans, states that "[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pretermination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action." In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), the United States Supreme Court held:
>
>> The essential requirements of due process ... are notice and an opportunity to respond....The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story....To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

In the present case, it is undisputed that Ms. Carter was not provided with a pre-deprivation notice or an opportunity to present a defense at a pre-deprivation hearing. Therefore, her due process rights were violated.

9

**CONCLUSION**

Upon review of the record, we find that the CSC was not manifestly erroneous in determining that Ms. Carter did not voluntarily resign from her employment with the Board. Additionally, the CSC correctly concluded that Ms. Carter was terminated in violation of her due process rights.

For the foregoing reasons, we find that the record reasonably supports the CSC's decision to reinstate Ms. Carter with back pay and all other emoluments of employment. Accordingly, we affirm the March 24, 2024 decision.

**AFFIRMED**